UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KENNETH WELLS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 07 C 3372 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| THE CITY OF CHICAGO; and CHICAGO POLICE OFFICERS JOSEPH WAGNER, #14796; and JAMES TRIANTAFILLO #14298, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Kenneth Wells ("Wells"), brought suit against Defendants, the City of Chicago, Officer Joseph Wagner ("Wagner"), and Officer James Triantafillo ("Triantafillo") (collectively, "the Officers"), for misconduct relating to his arrest on June 17, 2006. Count I alleges that the Officers falsely arrested Wells, violating 42 U.S.C. § 1983. Count II alleges that the Officers violated Illinois law by maliciously prosecuting Wells. Count III alleges that the Officers violated 42 U.S.C. § 1983, committing civil conspiracy. Finally, Count IV alleges that the City of Chicago is liable for the misconduct of the Officers under the doctrine of *respondeat superior*. Before the Court is Defendants' motion for summary judgment on all four counts.

## BACKGROUND

The Court derives the following background facts from the parties' filings of record, including their filings required under Local Rule 56.1.[1] Where the parties disagree over relevant

---

[1] Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the non-moving party to admit or deny every factual statement proffered by the moving party and to concisely

facts, the parties' competing versions are noted and/or are addressed in the analysis section below.

Wagner and Triantafillo are police officers, employed by the City of Chicago, both working in the Eleventh District. (Defs.' 56.1 ¶ 6.) The Officers are partners on the Tactical Narcotics Team for that district, and their main duty is to proactively combat narcotics crime in Chicago. (Defs.' 56.1 ¶ 6.) Officer Wagner is experienced in narcotics investigations, having participated in over one hundred investigations over the past five years, half of which resulted in arrests. (Defs.' 56.1 ¶ 29.)

On June 17, 2006, the Officers went on duty at 10:00 a.m., conducting surveillance on the 2900 block of W. Wilcox St. in Chicago. (Defs.' 56.1 ¶ 7.) The Officers made the decision to set up surveillance in that location because the Department had received a number of calls from citizens complaining of the drug activity recently taking place in the area. (Defs.' 56.1 ¶ 9.) In addition, that particular block had a history of high narcotic sales; during his time with the Chicago Police Department, Officer Wagner has made dozens of arrests of persons engaged in drug transactions in that area. (Defs.' 56.1 ¶¶ 9, 31.)

On the day of the arrest, Wagner was acting as the surveillance officer, meaning he was to observe the area and look for narcotics activity, and Triantafillo was acting as the enforcement officer, meaning he was to stop, investigate, and arrest individuals when directed by Wagner. (Defs.' 56.1 ¶ 11.) Both officers were in plain clothes, driving in an unmarked police car. (Defs.' 56.1 ¶ 7.) Together, the Officers drove in the unmarked squad car to W. Wilcox, where they approached Wells on the south end of W. Wilcox Street. (Defs.' 56.1 ¶¶ 35, 36.)

---

designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Meyers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to respond to a Rule 56.1 statement results in the court's admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

Wagner approached Wells and placed him under arrest. (Defs.' 56.1 ¶¶ 50, 56.) Another individual, Michael Tamm ("Tamm"), who was on the 2900 block of W. Wilcox for the purpose of purchasing crack-cocaine, was also placed under arrest after Triantafillo recovered narcotics from him. (Defs.' 56.1 ¶¶ 38, 55.) Both Tamm and Wells were then transported to the police station. (Defs.' 56.1 ¶ 62.) At the station, Wells was charged with delivery of a controlled substance and the Officers recovered approximately $160-$170 from him at the time he was arrested. (Defs.' 56.1 ¶¶ 59, 68.) Tamm was charged with possession of a controlled substance, to which he pled guilty. (Defs.' 56.1 ¶ 65.) Subsequently, Tamm agreed to testify against Wells at Wells' criminal trial because Tamm stated that he knew Wells was guilty. (Defs.' 56.1 ¶ 67.)

On June 18, 2006, a judge found probable cause to hold Wells for trial. (Defs.' 56.1 ¶ 69.) Wells remained in jail from June 17, 2006 until the remainder of his criminal trial on March 7, 2007. (Defs.' 56.1 ¶¶ 71, 72.) Although Wells was issued a bond, he chose not to post bond out of principle. (Defs.' 56.1 ¶ 74.) On March 7, 2006, Wells was found not guilty at the conclusion of a jury trial. (Defs.' 56.1 ¶ 71.)

There is, however, a dispute between Wells and the Officers as to what occurred prior to Wells' arrest regarding the issue as to whether there was probable cause. The Officers claim Wagner set up his surveillance from within a building on the north side of W. Wilcox Street, while Triantafillo parked nearby in the unmarked police car. (Defs.' 56.1 ¶¶ 14, 33.) Although Wagner was alone in the building while conducting the surveillance, he remained in constant radio contact with Triantafillo. (Defs.' 56.1 ¶¶ 12,13.)

The facts are disputed as to what, if anything, Wagner observed from his surveillance and, therefore, what he could have correctly told Triantafillo prior to joining him. During his

3

surveillance from the building on W. Wilcox Street, Wagner claims he saw Wells on the street approximately seventy feet to eighty feet away. (Defs.' 56.1 ¶ 17.) Officer Wagner maintains that within fifteen minutes four different people separately approached Wells. (Defs.' 56.1 ¶ 19.) Wagner states that each person gave Wells United States currency in exchange for a small strip of tape. (Defs.' 56.1 ¶¶ 21, 24.) Wagner believed all these transactions to be narcotic transactions. (Defs.' 56.1 ¶ 29.)

Based on Wagner's observations of Wells, Wagner decided to break his surveillance and approach Wells. (Defs.' 56.1 ¶ 34.) Wagner radioed Triantafillo, told him what he had observed, and asked Triantafillo to pick him up from his surveillance point. (Defs.' 56.1 ¶¶ 32, 33, 34.) Wagner described Wells as a black male, bald, and shirtless. (Defs.' 56.1 ¶ 32.) Triantafillo had no reason to doubt what Wagner had told him over the radio; therefore, he complied with Wagner's request and picked him up in the alley behind the building where Wagner was conducting his surveillance. (Defs.' 56.1 ¶¶ 33, 35.)

An additional factual dispute exists as to what both Wagner and Triantafillo observed as they approached Wells on Wilcox immediately prior to the arrest. The Officers claim that Wells was standing next to a black SUV and that Tamm was inside the SUV. (Defs.' 56.1 ¶¶ 36, 51.) Both officers maintain that as they approached, they witnessed an exchange of money for a strip of tape happen between Wells and Tamm, similar to the exchanges that Wagner claims to have seen during his surveillance. (Defs.' 56.1 ¶ 45.) Based on their experience, the Officers believed that this exchange was a narcotic transaction. (Defs.' 56.1 ¶ 47.) After watching the transaction, the Officers exited their vehicle and arrested both Tamm and Wells. (Defs.' 56.1 ¶¶ 49, 61.) The Officers maintain that they recovered narcotics from Tamm and sixty dollars from Wells at

the time of the arrests, and both individuals were placed into the police car at the same time. (Defs.' 56.1 ¶¶ 55, 58, 61.)

Wells disputes this entire sequence of events, beginning with what Wagner claims to have seen from his surveillance. Wells claims that on June 17, 2006, he was walking down W. Wilcox, on his way to the store. (Pl.'s 56.1 ¶ 2.) He asserts that the Officers approached and stopped him while he was walking to the store. (Pl.'s 56.1 ¶ 3.) The Officers asked Wells where he was going, and he told them to mind their own business. (Pl.'s 56.1 ¶ 4.) Following this interaction, the Officers allegedly ordered Wells against the car and told him to give them any guns or drugs he had or they would take him to jail, to which Wells responded by telling them to do their fucking job. (Pl.'s 56.1 ¶¶ 5, 6.) Wells claims that the Officers then arrested him, placed him in the car, where Tamm already was sitting. (Pl.'s 56.1 ¶ 7.) Wells states that he had not seen Tamm placed in the car, nor did he know why Tamm was arrested. (Pl.'s 56.1 ¶ 8.) Once in the unmarked police car, Wells alleges that the Officers again asked him to give them what he had, and Wells again refused. (Pl.'s 56.1 ¶ 9.) Wells maintains that he had nothing in his hand at the time he was arrested. (Pl.'s 56.1 ¶ 10.)

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cincinnati Ins. Co, v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party

must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. When the dispute is with respect to a fundamental issue in the case, it will be very difficult to establish a case that summary judgment should granted. *Chelios v. Heavener*, 520 F.3d 678 (7th Cir. 2008) (*Chelios*); *see also Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (holding that summary judgment cannot be used to resolve swearing contests between litigants).

## ANALYSIS

In his complaint, Wells seeks to recover damages on the basis of four counts. Wells alleges in Count I that the Officers falsely arrested him, thereby making them liable to Wells pursuant to 42 U.S.C. § 1983. Second, Wells seeks damages in Count II against the Officers for malicious prosecution under Illinois law. Third, Wells alleges that the Officers were involved in a civil conspiracy against him and seeks compensatory and punitive damages pursuant to

6

42 U.S.C. § 1983. Finally, Wells alleges that the City of Chicago is liable for the Officers' misconduct under Illinois law on the basis of *respondeat superior*.

## False Arrest

Wells alleges that the Officers had no probable cause to suspect him of drug dealing at the time of his arrest and, therefore, falsely arrested him pursuant to 42 U.S.C. § 1983. Section 1983 states that any person that causes another to be deprived of his or her rights secured by the Constitution and laws will be liable to the injured party. Civil Action for Deprivation of Rights, 42 U.S.C. § 1983 (1996). To prevail against the Officers under § 1983, Wells must demonstrate that he suffered a deprivation of his constitutional rights. *See Wagner v. Washington County*, 493 F.3d 833 (7th Cir. 2007); *see also Booker v. Ward*, 94 F.3d 1052 (7th Cir. 1996). Wells alleges that the Officers deprived him of his Fourth Amendment right to be free from unreasonable search and seizure.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). A law enforcement officer has probable cause to make an arrest when the "facts and circumstances within his knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect has committed or was committing an offense." *Beck v. Ohio*, U.S. 89, 91 (1964). If probable cause exists, then there can be no claim that the Officers are liable under § 1983. "Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (citing *Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir. 1997)); *Biddle v. Martin*, 992, F.2d 673, 676 (7th Cir. 1993) (*Biddle*).

7

There is a genuine issue of material fact surrounding the events that took place prior to Wells' arrest. Wells claims that, while walking down W. Wilcox Street, he had no interaction with any individuals until the Officers approached him and subsequently arrested him. The Officers claim that during his surveillance, Wagner observed Wells engage in four separate transactions that, based on his expertise, appeared to be narcotic transactions between Wells and the individuals. Thus, the only facts in this aspect of the case that are undisputed are that Wells was present on W. Wilcox Street on June 17, 2006, and that Wells was arrested by Wagner and Triantafillo. Defendants rely heavily in their reply in support of their motion for summary judgment that Plaintiff's admitting paragraph 53 of Defendants' 56.1 statement established that Plaintiff acknowledged having sold narcotics to Tamm. However, it is clear from Plaintiff's other responses to Defendants' 56.1 statement that Plaintiff intended for his response to be interpreted in such a way that he agrees with the statement as far as that is what Tamm said, not to the extent that he is admitting to partaking in the drug transaction with Tamm.[2]

This case is analogous to the recent Seventh Circuit case, *Chelios*. In *Chelios*, the plaintiff brought an unlawful arrest claim under § 1983 against the defendant. 520 F.3d at 685. The district court granted the defendant's motion for summary judgment based on contrary versions of the facts leading up to the arrest of the plaintiff by the defendant officer. The Seventh Circuit court reviewed the district court's decision to grant summary judgment for the defendant *de novo* and found that there was a factual dispute as to whether or not the plaintiff had touched the officer in the altercation. *Chelios*, 520 F.3d at 686. The court noted that "[t]he probable cause determination must be made by a jury 'if there is room for a difference of opinion

---

[2] The statement which Plaintiff admitted is: "According to Tamm, the police arrived about thirty seconds after he had received the tape of cocaine from Plaintiff and he was 'red-handed caught.'" (Defs.' 56.1 ¶ 53.)

8

concerning the facts or the reasonable inferences to be drawn from them.'" *Chelios*, 520 F.3d at 686. Because the factual dispute in the case was critical to the determination of whether probable cause existed, the court found that the district court had erred in ruling as a matter of law that there was probable cause. *Chelios*, 520 F.3d at 688.

Similarly, in this case, there is a factual dispute as to whether or not Wells engaged in any drug transactions while on W. Wilcox Street. This fact is critical to a finding of probable cause and, therefore, because of the genuine issue of material fact, the Court cannot find as a matter of law that probable cause existed. A reasonable jury could find that the Officers lacked probable cause to arrest Wells.

### *Qualified Immunity*

The Officers claim that they cannot be held liable for Count I under § 1983 because they are entitled to qualified immunity. In deciding qualified immunity, courts use a two-fold analysis. "First, the court 'must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right?'" *Smith v. Gomez*, 550 F.3d 613, 618 (7th Cir. 2008) (*Smith*) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If the answer to this question is yes, then the next sequential step is to ask whether the right was clearly established at the time of the alleged violation." *Smith*, 550 F.3d at 618. An officer is protected from liability under qualified immunity if his or her actions did not violate a clearly established constitutional right. *Viilo v. Eyre*, 547 F.3d 707, 709 (7th Cir. 2008). In determining whether a constitutional right is clearly established, "the inquiry is whether the application of that right to the particular set of circumstances is clear enough that a reasonable official would understand that what he is doing violates that right." *Phelan v. Village of Lyons*, 531 F.3d 484, 488 (7th Cir. 2008) (*Phelan*). In

9

the context of an unlawful arrest, it must be objectively reasonable for the officer to believe that the arrest is supported by probable cause. *Biddle*, 992 F.2d at 676.

The first prong of the test requires that facts are alleged to support a finding that Wells' Fourth Amendment rights were violated by the Officers. *See Smith*, 550 F.3d at 618. There is a factual dispute surrounding what took place prior to Wells' arrest and, therefore, the Court cannot find as a matter of law that probable cause existed for the arrest. Defendants have not met their burden of showing that no reasonable jury could find that there was a constitutional violation; therefore, they are not entitled to qualified immunity on the basis of prong one.

Assuming that there is a constitutional violation, the Officers are not able to satisfy the second prong of the test to receive qualified immunity. They are unable to establish that based on the undisputed facts, a reasonable officer in the same set of circumstances would believe that he was not violating Wells' Fourth Amendment rights by arresting him. The presence of a person in a high crime area is not even enough to establish reasonable suspicion; thus, no reasonable officer could believe that there was probable cause on this set of facts. *See Illinois v. Wardlow*, 528 U.S. 119 (2000). On this record, the Court cannot conclude that the Officers are entitled to summary judgment for Count I based on qualified immunity.

Based on the forgoing statement, Defendants' motion for summary judgment is denied as to Count I. There is a triable issue of fact as to whether or not probable cause existed at the time Wells was arrested; therefore, Defendants have not met their burden to show that the false arrest claim must fail as a matter of law or that they are entitled to qualified immunity.

*Malicious Prosecution*

Wells alleges that the Officers are liable to him based on a claim of malicious prosecution under Illinois law. In order to establish a claim for malicious prosecution under Illinois law, the

following elements must be established: "(1) the commencement or continuation of an original criminal or civil judicial proceeding by the defendant, (2) termination of the proceeding in favor of the plaintiff, (3) absence of probable cause for such proceedings, (4) presence of malice, and (5) damages resulting to plaintiff. *Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997) (*Washington*) (citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996) (*Swick*)). All of the elements must be present for the plaintiff to establish a claim. *Swick*, 662 N.E.2d at 1242. Probable cause, in the context of a malicious prosecution case in Illinois, is defined as "a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *Fabiano v. Palos Hills*, 784 N.E.2d 258, 266 (Ill. App. Ct. 2002).

Based on the undisputed facts of the case, Wells established that there was a criminal judicial proceeding by Defendants and that the proceeding was terminated in his favor. (Defs.' 56.1 ¶ 71.) However, as noted above, there is a genuine factual dispute as to whether or not the Officers had probable cause to arrest Wells. In order to have summary judgment granted on the malicious prosecution claim, Defendants have the burden of establishing that Wells could not, as a matter of law, prove that there was an absence of probable cause. Defendants have not met that burden and, therefore, summary judgment will be denied on the malicious prosecution claim.

### *Conspiracy*

Wells alleges that the Officers conspired together to violate his constitutional rights and are thereby liable for conspiracy pursuant to 42 U.S.C § 1983. In order to establish civil conspiracy under § 1983, a plaintiff must show: "(1) the existence of an express or implied agreement among the defendants to deprive him of his constitutional rights; and (2) an actual deprivation of those rights through overt acts in furtherance of the agreement." *Scherer v.*

11

*Balkema*, 840 F.2d 437, 422 (7th Cir. 1988). "A complaint [for civil conspiracy] cannot survive summary judgment if the allegations 'are vague, conclusionary and include no overt acts reasonably related to the promotion of the alleged conspiracy.'" *Amundsen v. Chi. Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000) (quoting *Spiegel v. Cortese*, 196 F.3d 717, 726-27 (7th Cir. 2000)). The agreement upon which a claim of conspiracy is based may be inferred through circumstantial evidence, "but only if a reasonable jury could conclude that the conspirators had, in fact, reached an understanding that they sought to injure [the] plaintiff." *Alexander v. South Bend*, 433 F.3d 550, 557 (7th Cir. 2006).

If a jury were to believe Wells' version of events, it could reasonably conclude that Defendants had reached an express or implied agreement to arrest Wells in violation of his constitutional rights and that those rights were, in fact, violated by the arrest. The factual dispute, therefore, precludes summary judgment in favor of Defendants on this issue; Defendants' motion for summary judgment on the conspiracy claim is denied.

### *Respondeat Superior*

Wells alleges that because the Officers were, at all times relevant to the Complaint, acting within the scope of their employment as police officers for the City of Chicago, then the City of Chicago is liable for the Officers' misconduct under the Illinois doctrine of *respondeat superior*.[3] To establish a *respondeat superior* claim in Illinois, a plaintiff must show first that the employee is liable to him; if the employee is not liable, then the local public entity cannot be held liable.

---

[3] Wells alleges the City of Chicago is liable only for Count II, a state claim of malicious prosecution. As Defendants correctly point out, although it was not necessary because it was not alleged in the Complaint, the City of Chicago cannot be vicariously liable for Counts I and III because these claims are made under Section 1983. *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658, 691 (1978) (A municipality cannot be held liable under § 1983 on a *respondeat superior* theory.); *see also Rumbold v. Town of Bureau*, 581 N.E.2d 809, 815 (Ill. App. Ct. 1991).

12

Tort Immunity Act, 745 ILCS 10/2-109 (2004). Additionally, "[a] municipal corporation is immune from liability for the tortious acts its employees committed in the execution or enforcement of any law unless the acts constitute willful and wanton misconduct." *LaMonte v. Belleville*, 355 N.E.2d 70, 78 (Ill. App. Ct. 1976).

As stated above, summary judgment could not be granted for Defendants with respect to Count II, malicious prosecution. A claim for malicious prosecution in Illinois requires, among other elements, a showing by the plaintiff that there was an absence of probable cause and the presence of malice. *Washington*, 127 F.3d at 557. In this case, facts regarding Wells' actions prior to his arrest remain disputed; therefore, it cannot be found, as a matter of law, that the Officers had probable cause to arrest Wells. Based on the undisputed facts, it also cannot be established, as a matter of law, that the officers did not act maliciously in prosecuting Wells for the delivery of a controlled substance.

Without a determination that probable cause existed at the time of the arrest, the issue remains open as to whether Defendants are liable for malicious prosecution. Thus, the City of Chicago is not automatically immune to a claim of *respondeat superior* under 745 ILCS 10/2-109. In addition, because no finding can be made, as a matter of law, with respect to whether the Officers' actions amounted to willful and wanton misconduct, a triable issue of fact remains as to whether or not the City can be held liable for the Officers' misconduct. Accordingly, the Court denies Defendants' motion for summary judgment with respect to Count IV.

*Damages*

Damages for False Arrest

Defendants contend that even if the Court denies summary judgment for Count I, false arrest, the Court should still limit the damages claim as a matter of law. Wells alleges that in

conducting the false arrest, the Officers violated his Fourth Amendment right to be free from unreasonable search and seizure. Damages for a false arrest claim should cover the time of the detention to the process of arraignment, but not more. *Wallace v. Kato*, 49 U.S. 384, 390 (2007).

It is undisputed that Wells was arrested on June 17, 2006, for delivery of a controlled substance and that on June 18, 2006, Wells attended his arraignment, where he was told of the charges brought against him and bond was set at $85,000. (Defs.' Exhibit M). Thus, Wells' claim for damages relating to Count I is, as a matter of law, limited to the time between his arrest on June 17, 2006 and his arraignment on June 18, 2006. Wells is not entitled to damages for the entire nine-month pre-trial incarceration period for the false arrest claim.[4]

Failure to Mitigate Damages

Defendants also contend that Wells should be limited in his claim for damages with regard to Count II, malicious prosecution, because Wells failed to mitigate his damages when he chose not to post bond. Under Illinois law, malicious prosecution is a common-law tort. *See Aguirre v. Chicago*, 887 N.E.2d 656 (Ill. 2008). "The duty to mitigate damages imposes a duty on the injured party to exercise reasonable diligence and ordinary care in attempting to minimize his damages." *Tsoukas v. Lapid*, 315 N.E.2d 823 (Ill. App. Ct. 2000). "When a tort victim fails to take reasonable steps to mitigate his damages, those damages are either cut down or eliminated altogether under the principle of avoidable consequences." *Lawson v. Trowbridge*, 153 F.3d 368, 277 (7th Cir. 2998) (citing *Brook v. Allison Div. of Gen'l Motors Corp.*, 874 F.2d 489, 490 (7th Cir. 1989)). While the duty to mitigate is not absolute, the injured party is still required to avail himself of reasonable opportunities to help himself. *Gladden v. Roach*, 864

---

[4] Plaintiff concedes this point as he did not address it in his reply brief.

F.2d 1196, 1200 (5th Cir. 1989) (holding that jury instructions regarding mitigating damages were proper where the defendant refused to allow his friends to post bond).

Wells, in this case, had a duty to take reasonable steps to mitigate his damages resulting from the malicious prosecution. There is no dispute that Wells remained in jail for the full nine months he was awaiting trial, even though bond had been set or that Wells chose to remain incarcerated as a matter of principle. It is also, however, undisputed that Wells did not personally have the $5,000 to be released from custody. Therefore, a material dispute exists as to whether in fact Wells had other resources to enable him to post bond. Summary judgment is denied as to this issue.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is denied in part and granted in part. The motion will be denied with respect to Count I, false arrest; Count II, malicious prosecution; and Count III, civil conspiracy. Summary judgment will be denied with respect to Count IV, liability based on the doctrine of *respondeat superior*. The Court grants Defendants' request to limit damages as to Count I but denies the request as to Count II.

Date: February 25, 2009

JOHN W. DARRAH
United States District Court Judge